UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CHRISTINE JACKSON, AS CONSERVATOR AND
NEXT FRIEND OF DENAREUS CORTEZ MARTIN                    PLAINTIFF

VS.                                      CIVIL ACTION NO. 3:17-cv-181-MPM-JMV

TOWN OF TUTWILER, MISSISSIPPI; et al                     DEFENDANTS

**ORDER**

The parties have filed various motions in the above-entitled action. This court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is, *inter alia*, an Eighth Amendment cruel and unusual punishment case arising out of two separate incidents in which plaintiff Cortez Martin claims to have been forced by police officers and other municipal employees of the Town of Tutwiler to perform in unsafe and humiliating spectacles against his will, while he was performing community service following a conviction. Plaintiff, who was nineteen years old at the time of relevant events, asserts that he is a mentally disabled individual who, the record reveals, was adjudicated incompetent by a chancery court judge in 2015. [Plaintiff's exhibit 2 at 1]. In his complaint, plaintiff seeks recovery arising out of 1) a January 27, 2012 boxing contest between himself and police officer Jimmy Johnson and 2) a February 4, 2012 incident in which he was forced to ingest a large amount of cinnamon, as part of a so-called "cinnamon challenge." These incidents were videotaped and posted on social media, and plaintiff claims that this subjected him to further humiliation.

The Town notes that, as soon as it learned about these incidents, its Board of Aldermen

called an Executive Session special meeting on February 14, 2012 to investigate them. At that meeting, the Board conducted interviews of the individual defendants and the Chief of Police, Terry Tyler, regarding their involvement. Based on the admitted participation of the individual defendants, a motion was made and passed by the Board to immediately terminate the individual defendants and Chief Tyler. Plaintiff subsequently filed the instant action in this court, and this matter is scheduled to be tried before a jury in February 2019. The parties have filed various motions in this case, which this court will presently address.

This court first considers plaintiff's motion for default judgment against the individual defendants Jimmy Johnson, Bobby Banks, Jr., and Angelia Chandler. In that motion, plaintiff writes that:

> The movant will show that she is entitled to a default judgment in this action as the afore-named Defendants have been duly served with a summons issued by the clerk of the court and a copy of the complaint filed herein, and further that the said Defendants are not infants or un-represented incompetent persons, and that the said Defendants have failed to plead or otherwise defend, and finally that the said Defendants have entered no appearance or otherwise initiated any proceedings in this action.

No party has responded in opposition to plaintiff's motion, and the only factor which gives this court pause in granting it is that it was filed over one month past the deadline set by Magistrate Judge Virden in a show cause order which she issued to plaintiff. When this court, through its staff, notified plaintiff's counsel of his failure in this regard, counsel "apologized profusely" and stated that he was unaware of Judge Virden's order. It is unclear why counsel would be unaware of a show cause order posted on the docket, but, considering that no party has objected to the default judgment being entered, this court will reluctantly grant plaintiff's motion.

In granting the motion for default judgment, this court is motivated largely by the fact that this case involves allegations of serious constitutional violations, and, if none of these three individual defendants have seen fit to defend themselves, then this court is reluctant to grant

2

them the windfall of a dismissal based upon an oversight by plaintiff's counsel. Plaintiff does not address the issue of damages in his motion, but this court presently intends to consider this issue in a hearing to be held after the trial in this case. This will allow this court to benefit from the evidence presented at trial in assessing any compensatory and/or punitive damages against the defaulting defendants.

Having addressed the status of the defaulting individual defendants, this court will now address the motion for summary judgment filed by the Town of Tutwiler. In its summary judgment motion, the Town has sought dismissal of all claims asserted against it, including state law negligence claims, Fifth and Fourteenth Amendment due process claims, and Eight Amendment cruel and unusual punishment claims. In responding to the Town's motion, plaintiff has chosen only to address his Eighth Amendment claims, and defendant correctly argues that, as a result, he has conceded its other arguments, which strike this court as being meritorious. Indeed, it appears to this court that the Eighth Amendment constitutes the proper framework for considering the claims in this case, inasmuch as all parties agree that, at the time he was injured, plaintiff was in police custody while performing community service for a prior conviction. Moreover, plaintiff has offered no arguments in opposition to defendants' contention that he failed to comply with the procedural and substantive requisites of the Mississippi Tort Claims Act (MTCA) before asserting state law claims against it. This court will therefore concentrate solely upon plaintiff's Eighth Amendment claims in this order, and defendant's motion to dismiss the remaining claims will be granted.

In seeking summary judgment, the Town first makes a rather equivocal argument that, even accepting plaintiff's version of the facts as true, the two incidents in this case were not sufficiently serious to constitute an Eighth Amendment violation. Specifically, the Town argues

that "[w]hile the boxing match and the 'cinnamon challenge' were unquestionably inappropriate and lacked due care for Martin's safety, it is far from clear that either incident constituted the type of cruel and unusual punishment contemplated by the Eighth Amendment." [Brief at 7-8]. Defendant thus argues that it is "far from clear" that an Eighth Amendment violation occurred in this case, but, accepting plaintiff's version of the facts as accurate, then it must disagree.

To establish an Eighth Amendment violation, the plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Additionally, the plaintiff must show that jail officials (or, in this case, supervising officers) acted or failed to act with deliberate indifference to that risk. *Id.* at 834, 114 S.Ct. 1970. Having viewed the video of the incidents, this court concludes that the boxing match in particular meets this standard, given the serious blows which were inflicted upon plaintiff by Officer Johnson, a much larger and older opponent. While the "cinnamon challenge" presents a closer issue in this context, this court is inclined to allow the jury to determine this issue as well. In so stating, this court notes that the video depicts the plaintiff running to a sink and retching after attempting to ingest the cinnamon, and it thus appears that this activity may well involve a substantial risk of choking. Moreover, it seems clear that both incidents were so utterly devoid of any valid law enforcement or punitive purpose as to greatly assist plaintiff in demonstrating deliberate indifference.

While the video does depict Cortez smiling and seemingly enjoying himself at certain parts of the incidents, he insisted in his deposition that he initially refused to participate in them. Indeed, defendant only argues that Cortez consented to a *continuation* of the boxing match after it had already begun. [Brief at 8]. This argument seems less than compelling, considering that the incidents should never have occurred in the first place, considering that plaintiff had, by his

account, initially refused to participate. Indeed, it strikes this court that conducting these sort of spectacles would not even occur to a responsible law enforcement officer in the first place, given that plaintiff was there to perform community service, not to entertain officers. The Town evidently agrees, given that it fired the officers involved.

The Town argues that any damages suffered by Cortez in this case were *de minimis*, but, having viewed the video, this court certainly believes that plaintiff has established fact issues regarding significant injuries arising from the boxing contest. The Town argues that plaintiff's only objectively-visible injuries were a knot on his head, but the video reveals that Cortez received numerous heavy blows to his head which, in the court's view, carried a substantial risk of concussion or other brain injuries. This court recognizes that the Town has a stronger argument that any damages arising from the cinnamon challenge were not sufficiently serious, and, for this reason, it is inclined to have the jury assess damages for the two incidents separately. That way, if the Fifth Circuit should decide that the cinnamon challenge gave rise to purely *de minimus* damages or that it did not involve an Eighth Amendment violation at all, then it can simply strike any damages in that context, without requiring a full retrial on damages.[1] For similar reasons, this court intends to have the jury make separate factual findings regarding whether Chief Tyler was present at the boxing match and the cinnamon challenge, thereby facilitating post-verdict review in this context.

With the above caveats, this court concludes that plaintiff has established fact issues regarding whether he suffered an Eighth Amendment violation in this case, and it will now turn

---

[1] By contrast, if this court were to preclude plaintiff from asserting his claims with regard to the cinnamon challenge, and the Fifth Circuit concluded that it had erred in doing so, then this would require a remand for retrial. Considerations of judicial economy therefore appear to support allowing the jury to decide these issues separately.

5

to the issue of whether the Town may be held liable for the actions of its officers in this case. The Town's briefing makes it clear that its municipal liability argument is its primary one in this case, and this court acknowledges that federal law does, in fact, make it quite difficult for plaintiffs to recover against municipalities in § 1983 cases. Indeed, in its seminal 1978 decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the U.S. Supreme Court held that municipalities may only be held liable for their own constitutional violations, and it made clear that they may not be held vicariously liable for any violations by their employees.[2]

It is well settled that, under the *Monell* framework, a municipality may be held liable for its own formal policy decisions, or alternatively, by demonstrating that it had an informal policy or custom of committing a particular constitutional violation. *Monell*, 436 U.S. at 659. In his brief, plaintiff concedes that the Town had no formal policy in favor of "violat[ing] the civil rights of helpless handicapped children," but he argues that it had a "custom" of doing so. Specifically, plaintiff argues that:

> In the Town of Tutwiler in the early part of 2012 it was customary to violate the civil rights of helpless handicapped children. Upon a showing of such a custom, a municipality may be held liable under the provisions of 42 U.S.C. § 1983. *Brown v. the City of Hazlehurst*, 741 So.2d 981 (Miss. App. 1999). This custom is evidenced by the images and narrative depicted on Exhibit 5, is described by Cortez in his deposition, and by Felicia in her affidavit. And the factual evidence is supported by the opinions of the plaintiff's experts, thereby meeting the plaintiff's burden of to identify a policy or custom that resulted in Cortez's injuries.

[Plaintiff's brief at 7].

As best this court can discern, there is little, if any, factual support for this argument. Indeed, this passage is typical of plaintiff's brief as a whole, in which his counsel repeatedly

---

[2] The U.S. Supreme Court has likewise held that punitive damages may not be recovered against municipalities in § 1983 cases. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981). This is a significant factor in a case in which plaintiff's compensatory damages are, arguably, not particularly great but where the actions of the individual officers seem quite reprehensible.

makes reference to entire exhibits and depositions and would apparently have this court guess regarding which portions of the proof he is referring. This is clearly improper, particularly in the present legal context, which imposes such a difficult burden of proof on the plaintiff. Indeed, while "a pattern of unconstitutional conduct" by "municipal actors or employees" may give rise to municipal liability in some circumstances, *see Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010), this is an exceedingly difficult burden for plaintiffs to meet. The Fifth Circuit has held that establishing such a pattern or custom requires "sufficiently numerous prior incidents[,]" and these prior incidents must be both similar and specific to the alleged violation in question. *See, e.g., Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 850-51 (5th Cir. 2009). Clearly, this is a very stringent standard which, in this court's experience, very few plaintiffs are able to meet.

Having reviewed the depositions and exhibits cited above, including the views of plaintiff's experts, this court concludes that he has not even come close to establishing that the City had an unofficial policy in favor of "violat[ing] the civil rights of helpless handicapped children." In arguing otherwise, plaintiff repeatedly relies upon the improper treatment which was inflicted upon *him*, but, the relevant standards in this context require, once again, "sufficiently numerous prior incidents." In the court's view, two incidents involving only the plaintiff do not suffice in this regard. If plaintiff is aware of any other such incidents involving the abuse of "handicapped children," then he should have specifically pointed them out in his briefing, but he failed to do so. Moreover, this court has reviewed the views and reports of plaintiff's experts, and they strike it as being highly conclusory and of virtually no assistance in deciding the Eighth Amendment issues in this case.

This court therefore concludes that plaintiff has failed to demonstrate that any constitutional violation he suffered was the result of an unofficial Town custom or policy, and it turns to the one argument which, in its view, might potentially allow plaintiff to recover against the Town in this case. Specifically, this court is inclined to agree with plaintiff that, assuming that Chief Tyler was physically present at the boxing match and/or cinnamon challenge, and did nothing to stop them, then his own status as the final policymaker for the Town might well subject it to liability. This court emphasizes, however, that this theory of liability depends upon the jury accepting plaintiff's testimony regarding a fact which is very much disputed by defendant. That fact, which this court regards as the crucial fact issue of this case, involves the question of whether Chief Tyler was personally present for the boxing match and/or cinnamon challenge. In his deposition, plaintiff testified that Tyler was present at both events, and, in its reply brief, the Town appears to acknowledge that this contention gives rise to a disputed fact issue. This court agrees, but it is worth emphasizing that defendant Jimmy Johnson, the police officer against whom plaintiff boxed, unequivocally stated in an affidavit that:

> 4. As Cortez Martin was joking around with me about boxing him, I put on a separate pair of boxing gloves and engaged in a boxing match with him, which was recorded by Bobby Banks, Jr. I was off duty from the TPD when the boxing match occurred and no one from the TPD, other than Bobby Banks, Jr., knew that the boxing match was taking place and did not condone it. No other official from the Town of Tutwiler knew that the boxing match was taking place. Contrary to the allegations against me, I am not an amateur boxer.

[Johnson affidavit at 2].

Johnson's affidavit was flatly contradicted by plaintiff's testimony that:

> Q: What I want to know is who was in the garage with you when you and Jimmy were boxing? Was anybody else there?
> A: Bobby and Terry and Pipe.
> Q: Bobby Banks?
> A: Yeah.
> Q. And who else did you say?

>A: And Terry.
>Q: Who is Terry.
>A: Terry Tyler.

[Plaintiff's depo. at 38]. It is thus clear that one of these two individuals must be providing false testimony, but, at this juncture, this court is required to view the facts in the light most favorable to plaintiff, as the non-moving party. This court will therefore assume for the purposes of this motion that Chief Tyler was, in fact, present at the boxing match, although a jury may be less willing to reach this conclusion at trial.

In its reply brief, the Town argues that, regardless of his presence or absence at the two incidents, Chief Tyler was not its final policymaker regarding the issues in this case. This court recognizes that the Town's argument on this issue is a serious one, and it also acknowledges that it presents an issue of law regarding which this court, and not a jury, will have to make a final ruling of law. Moreover, it is possible that this court will reach a different conclusion on this issue at the directed verdict or JNOV stages of trial, after it has heard the evidence at trial and considered any additional authorities submitted by the parties. At this juncture, however, this court is tentatively inclined to conclude that Chief Tyler was, in fact, the Town's final policymaker regarding the treatment afforded to Martin, for reasons which it will presently explain.

The U.S. Supreme Court has made it clear that "whether a particular official has 'final policymaking authority' is a question of state law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723 (1989); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1299 (1986). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur*, 475 U.S. at 483,

9

106 S.Ct. at 1299. Moreover, "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." *Jett*, 491 U.S. at 737, 109 S.Ct. at 2724.

This court acknowledges at the outset that the evidence regarding any state or local guidance in this context appears to be exceedingly limited, and neither side has offered what it regards as a dispositive statute or ordinance. However, this does not strike this court as being particularly surprising, considering the issues which are involved in this case. As best this court can discern, the policy issue in this case involves the proper method of providing police supervision of convicts who are performing community service. In particular, the question appears to be whether it was appropriate for such officials to utilize their position of authority to coerce a young convict (who is alleged to be mentally disabled) into performing potentially harmful acts for the officers' own personal amusement. This court believes that this question essentially answers itself, and it is therefore unsurprising that the Town did not see fit to pass a regulation or express delegation dealing with it. Indeed, it appears that the issues in this case relate to acts which are so obviously inappropriate that, in the court's view, any Board of Aldermen would assume that a responsible Police Chief would, if he became aware of such conduct, take effective steps to correct them, as a matter of common sense and basic decency.

These considerations aside, this court must ask the fundamental question of, if Chief Tyler was not the final policymaker on this issue, then who, in fact, was? In its briefing, the Town argues that the Board of Aldermen was its final policymaker on this issue, but this court finds this argument to be less than persuasive. Indeed, it seems highly questionable that this is an issue regarding which the Board of Aldermen would have been called upon to pass judgment, and the Town cites no prior occasions in which the Board was called upon to set standards

regarding the supervision of convicts performing community service by police. More to the point, the two incidents in this case were, according to plaintiff's testimony, spontaneously proposed by town officers while he was performing community service. Obviously, the members of the Board of Aldermen were not present to pass judgment upon these incidents, and once they took place, the damage had already been done to plaintiff. True enough, the Town has a legitimate argument that the fact that it fired the officers involved in the incidents set its municipal policy, but, as discussed below, any such firings did not serve to negate the harm already suffered by plaintiff.

It strikes this court that the duty of police officers in this context is rather clear, namely to ensure that convicts perform their required service and that they do so in a manner consistent with their own safety and that of the public. This court frankly does not believe that this is an issue regarding which responsible officers would need clarification, but, to the extent that they do, it would appear to be the Chief of Police to whom final responsibility has been delegated. In its brief, defendant relies heavily upon the deficiencies in plaintiff's own briefing on the delegation issue, writing that:

> To be clear, a Police Chief, Clerk, or any other municipal employee may be deemed a final policymaker if the Board of Aldermen delegates its policymaking authority to that particular employee. *See Flores v. Cameron Cnty., Tex.,* 92 F.3d 258, 269-70 (5th Cir. 1996). (explaining that there must be a delegation because it is not enough that the municipal employee be the "de facto policymaker"). But the word "delegation" appears nowhere in Plaintiff's oppositional response, and there certainly is no evidence to support a delegation theory.

[Reply brief at 6-7].

This court agrees with defendant that the briefing of plaintiff's counsel on this issue might be improved. Indeed, the entire prosecution of this case has been quite deficient.[3] Nevertheless, this court wishes to answer this question of law correctly, and the answer submitted by defendant simply does not seem correct. More to the point, it appears that, if the Town's answer is correct, then it would virtually never face liability under circumstances such as those in this case. When deciding a close and difficult issue of law such as this one, this court tends to err on the side of simple fairness and justice, and it simply does not seem fair to allow the Town to defend itself based on the notion that the Board of Aldermen set its final policy on this issue when it would never actually be in a position to influence events such as those in this case, beyond imposing discipline after the fact.

It appears that delegation is essential in precisely situations such as these, where the relevant body understands that it would never be in a position to actually make real-time decisions regarding a particular matter, and it therefore relies upon a trusted senior official to do so. Of course, *Monell* makes it clear that a municipality may not be held vicariously liable for the actions of its employees, and the "final policymaker" doctrine is thus quite limited and applies only to the actions of the official at the very top of the chain of command regarding a particular decision. Moreover, this limited liability only applies to the *personal involvement* of that single high official in the relevant decision, which is why this court has found that the Town only faces potential liability in this case if Chief Tyler is found to have been personally present at the boxing match and/or cinnamon challenge.

---

[3] This is evidenced by the Magistrate Judge's show cause order, with which counsel failed to timely comply. As discussed below, the Magistrate Judge also struck one of plaintiff's expert witnesses based on his failure to provide the required expert report.

In the court's view, if the "final policymaker" exception does not apply in extreme situations such as these, where the most senior official with authority for supervising officers' conduct actually participated, then it is a quite toothless doctrine. This court does not believe that it was the U.S. Supreme Court's intent for the doctrine to be so limited. Moreover, if the Chief of Police is not the most senior official to whom authority has been delegated to set final standards regarding the day-to-day behavior of police officers, then who exactly is that official? The Town cites no other such official in its briefing.

The Town argues that "[t]he very best evidence that the Board of Aldermen is the final policymaker is the fact that the Board promptly fired everyone involved in the boxing match and Cinnamon Challenge—including Tyler." [Reply brief at 7]. Defendant further notes that "[t]he Fifth Circuit has expressly held that a governmental employee did not have final policymaking authority where the employee's actions on the subject at issue were subject to review by a higher body within the governmental entity." [*Id.*, citing *Beattie v. Madison County Sch. Dist.,* 254 F.3d 595, 603 (5th Cir. 2001) and *Advanced Technology Bldg. Solutions, L.L.C. v. City of Jackson, Miss.,* 817 F.3d 163, 167 (5th Cir. 2016).] [*Id.*] This court has reviewed the *Beattie* and *Advanced Technology* decisions upon which the Town relies, but it does not regard them as being particularly helpful authority in this case. Indeed, the Fifth Circuit in *Beattie* emphasized that "[t]he board oversaw Jones's employment decisions—an indication that she may not be a final policymaker." *Beattie*, 254 F.3d at 603.

Clearly, an employment decision is an action which is far more amenable to appellate review than the allegedly coerced and harmful incidents in this case, and this court therefore regards the Town's cited authority as being easily distinguishable. In *Advanced Technology*, the Fifth Circuit concluded that a governmental official was not the final policy maker regarding

13

funding decisions regarding which, it found, the city council had final authority. *Id.* at 167. The Fifth Circuit in *Advanced Technology* also reviewed other circuit decisions in this context, noting that "in multiple cases, we have affirmed that officials are not final policymakers when a supervisory board has the authority to accept or reject their decisions." *Id.*, *citing Barrow v. Greenville Independent School District,* 480 F.3d 377, 381–82 (5th Cir. 2007), *Worsham v. City of Pasadena*, 881 F.2d 1336, 1337, 1340–41 (5th Cir. 1989), *Bolton v. City of Dall.,* 541 F.3d 545, 550 n. 4 (5th Cir. 2008). This court has reviewed each of these Fifth Circuit decisions, and they all involved, like *Beattie*, employment decisions which were subject to review by an appellate board.

Employment and funding decisions, generally speaking, may be remedied by a board or other appellate body after the fact. Those are very different from the harm which plaintiff is alleged to have suffered in this case. Here, this court is dealing with injuries which included heavy blows being inflicted upon plaintiff's head and humiliating videos being posted on social media. These are injuries which are not subject to being "reversed" by an appellate body, and thus there was no *meaningful* appellate review. The word "meaningful" is crucial in this context, since the Fifth Circuit has made clear that "[m]eaningful review" by an appellate board may indicate that it is the final policymaker regarding a particular matter. *Worsham* at 1341.

This court does not regard the Fifth Circuit's use of the phrase "meaningful review" in this context as being mere surplus language, and it does not believe that the Town's decision to fire the employees involved in the incidents in this case constituted a "meaningful review" of their actions, from plaintiff's perspective. While plaintiff may well have welcomed the news that his alleged tormentors had been fired, it did not serve to negate the injury which he had already suffered. It strikes this court that, assuming that Chief Tyler did, in fact, allow plaintiff's beating

14

by Johnson to continue unchecked for a period of a few minutes, then final municipal policy on this issue had already been set, at least from plaintiff's perspective. Indeed, it is clear that the Board of Aldermen may be more accurately characterized as a *disciplinary* body in this case, rather than an appellate body. Moreover, while the Board is to be credited for imposing effective discipline against the officers involved, this does not change the fact that it was simply not in a position to alter the course of events which led to the harm plaintiff suffered.

In its briefing, defendant cites cases in which other district courts in this state have concluded that police chiefs were not the final policymakers regarding issues different than the one in this case. *See Riggins v. City of Indianola, Miss.,* 196 F.Supp.3d 681, 691-92 (N.D. Miss. 2016), *Smith v. City of Wiggins, Miss.,* 2015 WL 6872230, at *1 (S.D. Miss. Nov. 9, 2015), *Bryant ex rel. Bryant v. City of Ripley, Miss*., 2015 WL 686032, at *7 (N.D. Miss. Feb. 18, 2015). This court takes no issue with these opinions, but they do not necessarily mean that Chief Tyler was not the final policymaker for the specific issue in this case, namely the treatment to be afforded by police officers to individuals performing community service. Aside from the different policies involved, a crucial distinction between the above cases and the instant one lies in the fact that Chief Tyler is alleged to have been *personally present* at the commission of serious constitutional violations and to have done nothing to stop them. In the court's view, this presents an allegation of a far more direct involvement by Chief Tyler in constitutional violations than in cases such as *Riggins*, where the police chief was alleged to have failed to adopt proper policies to prevent a suicide by an inmate outside of his presence. *Id.* at 688-89. Similarly, in *Smith*, the police chief was merely alleged to have "ratified" the unlawful conduct of his officers after the fact by providing supportive deposition testimony, and he was not alleged to have been personally involved in any constitutional violations. *Smith,* 2015 WL 6872230, at *9.

The fact that Chief Tyler is alleged to have directly participated in the constitutional violations in this case gives plaintiff a much stronger argument that he affirmatively set municipal policy than in the cases upon which the Town relies. In the court's view, the facts of this case are more reminiscent of the U.S. Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), where the Court found that a county prosecutor had directly participated in a constitutional violation by ordering officers to conduct an unlawful search. *Id.* at 470. In the court's view, assuming that the jury concludes that Chief Tyler was present at the boxing match and/or cinnamon challenge, it could very reasonably conclude that he was directly involved in the constitutional violations in this case, in a manner which should subject the Town to liability under *Pembaur*. In so stating, this court emphasizes that the boxing match in particular lasted a period of a few minutes, and there is no protest to be heard from any of the voices on the video. Under these circumstances, this court regards Chief Tyler's alleged actions as being the functional equivalent of the county prosecutor in *Pembaur*'s ordering officers to make an unlawful search.

Thus, while this court recognizes that defendant offers serious arguments on this issue, it is not presently able to agree with them. This court will make a final decision on this issue at the directed verdict or JNOV stages of trial,[4] but, at this juncture, it tentatively concludes that Chief Tyler was the final policymaker for the Town on this issue. This court intends to so instruct the jury, along with instructions making clear that they should only impose liability against the Town if they believe plaintiff's testimony that Chief Tyler was present at either of the two

---

[4] This court notes that deciding these issues at the JNOV stage of trial would allow the jury to make findings regarding all of the important fact issues in this case. This would, in turn, grant this court, and the Fifth Circuit, full flexibility to resolve the legal issues in this case, hopefully without the need for a remand for a new trial.

16

incidents at issue in this case.[5] That is, in the court's view, the only factual scenario in which Chief Tyler might validly be found to have established municipal policy on this issue. This court therefore concludes that genuine fact issues exist regarding the Town's liability for the alleged Eighth Amendment violations in this case, and its motion for summary judgment will therefore be granted in part and denied in part.

This court now turns to the Town's motions to strike plaintiff's expert witnesses Lloyd Grafton and H. Scott Ross. In light of this court's order today, it seems clear that most of these witnesses' proposed testimony is moot, since they largely relate to the state and federal claims which have already been dismissed. Moreover, Judge Virden has, since the filing of defendant's motion, already struck Ross' testimony on procedural grounds, namely for failing to provide the required expert report. Judge Virden's ruling appears correct to this court, but, even if she had not so ruled, both of plaintiff's experts appear to simply be "I win" experts who seek to tell the jurors that they should find in favor of plaintiff with regard to all of the claims asserted in the complaint. This court has no intention of allowing any expert to tell the jury how they should rule regarding the ultimate legal issues in this case, and it seems clear that plaintiff seeks to use Grafton and Ross' testimony for this purpose.

The sole remaining claim in this case is an Eighth Amendment cruel and unusual punishment claim brought under § 1983, and this court has a well-established practice of litigating such claims at trial. Namely, each side in this case will be given an opportunity to present their proof at trial, after which this court will rule upon any outstanding issues of law at the directed verdict stage. This court will then instruct the jurors based upon Fifth Circuit model

---

[5] In the court's view, prior approval of the boxing match and/or cinnamon challenge by Chief Tyler might also suffice to establish municipal policy, but plaintiff has presented no proof that such prior approval was given.

17

jury instructions, and they, having heard the parties' closing arguments, will decide the ultimate issues in this case.

There may be some issues, such as the nature of plaintiff's handicaps and psychological injuries, regarding which expert testimony may be helpful. Indeed, this court notes that plaintiff designated two experts to testify regarding these topics, and the Town has not filed motions to strike them. As to Grafton's proposed testimony, however, he clearly seeks to offer the jury opinions regarding the ultimate issues in this case, such as:

> • Opinion #1: "It is my opinion to a reasonable degree of professional certainty that Denareus Cortez Martin had his civil rights violated while in the custody of the Tutwiler Police Department."
> • Opinion #2: "It is my opinion to a reasonable degree of professional certain that Denareus Cortez Martin was the victim of excessive force by Police Officers Jimmy Johnson and Bobby Banks, Jr. when he was punched and hit in his head and fell several times on the concrete floor."

Ross's testimony has, once again, already been stricken by Judge Virden, but this court notes for the record that it was similarly conclusory in nature and likewise sought to tell the jury how they should rule regarding the ultimate legal issues in this case.

Expert opinions that merely tell the jury what legal conclusion to reach are impermissible. *Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 240 (5th Cir. 1983). Although Federal Rule of Evidence 704 states that an "opinion is not objectionable just because it embraces an ultimate issue," the Fifth Circuit has made clear that Rule 704 does not "allow a witness to give legal conclusions." *Id.* ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.") An expert's opinion must be excluded if it crosses the line between a "mere explanation of the expert's analysis of the facts" and a "forbidden opinion on the 'ultimate legal issue.'" *United States v. Gutierrez-Farias*, 294 F.3d 657, 663 (5th Cir. 2002). This court finds that Grafton's

18

proposed testimony in this case clearly offers opinions regarding the "ultimate legal issue" in this case, and it will accordingly grant the Town's motion to strike Grafton's testimony.

On the other hand, this court would also observe that this case is one which the parties should be able to settle. For its part, the Town appears to recognize that a number of municipal employees, including its Chief of Police, acted in a highly inappropriate manner towards plaintiff in this case. While the Town did terminate these employees, it is not clear why it would be opposed to plaintiff receiving some compensation for the injuries he suffered. For his part, plaintiff should, in the court's view, recognize that his claims against the Town have a number of weaknesses. First, he is, as previously stated, legally barred from recovering punitive damages against the Town, and it appears that his compensatory damages in this case are not particularly serious. Moreover, in order to recover any damages at all, he will have to persuade a jury that Chief Tyler was, in fact, present at the boxing match and/or cinnamon challenge. Additionally, the jury may conclude from the video that he consented to participate in the two incidents, notwithstanding any mental deficiencies he might have. Finally, this court emphasizes once again that the "final policymaker" issue in this case is an exceedingly close and difficult one, and it is entirely possible that it will view it differently at the directed verdict stage of trial. In light of the above considerations, it does not appear to be in either side's interests to litigate these matters in a costly trial, and it encourages them to explore any settlement opportunities which are available.

As a final note, this court has, as previously stated, reviewed the video of the incidents which occurred in this case. It is likely that a jury will be deeply moved, if not offended, by the activities captured, whereby supposedly "normal" people take warped enjoyment at the expense of the plaintiff, an apparently good-natured young man who was adjudicated by a chancery court

judge in 2015 as "mentally handicapped" and "not of sufficient mental capacity to make intelligent decisions regarding his welfare, persona and estate or to protect his lawful rights." [Plaintiff's exhibit 2 at 1]. It is high time for those in authority in civil jurisdictions, large and small, to recognize the moral, if not juridical, boundaries of human decency. If the parties in this case were so of a mind, they might find enlightenment in the works of William Faulkner and learn vicariously the limits of acceptable conduct in a civilized society. In particular, the parties might learn something from contemplating the boorish and indecent exploits of one Lump Snopes in The Hamlet.

It is therefore ordered that:

1. Plaintiff's motions for default judgment against defendants Johnson, Banks and Chandler are granted;
2. The Town's motion for summary judgment is granted in part and denied in part; and
3. The Town's motion to strike the expert testimony of Lloyd Grafton is granted.

So ordered, this, the 16th day of November, 2018.

/s/ Michael P. Mills
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**